Civil Action No.: 24-cv-01842-GPG-CYC

JOAQUIN GUZMAN LOERA,

      Plaintiff,

v.

MISTELLE J. STARR, Warden, in her official capacity,
COUNSELOR JOHN HOLBROOKS, in his official capacity,

      Defendants.

_____

### RESPONSE TO DEFENDANTS' MOTION TO DISMISS [Doc. 62]

_____

      Plaintiff Joaquin Guzman Loera, by and through his attorneys David A. Lane, Darold Killmer, and Reid Allison of KILLMER LANE, LLP hereby submits the following response to Defendants' Motion to Dismiss [Doc. 62].

### FACTS ALLEGED[1]

      Plaintiff Joaquin Guzman Loera has been incarcerated in ADX since 2019. In light of his criminal sentence, he will be in BOP's custody for the rest of his life.

      For years, Plaintiff has been subjected to severe sleep deprivation: every night hot air is blown into his cell for 15 minutes every two hours; the hot air routinely wakes him up 4-5 times per night; and "the oppressive heat itself makes it near impossible for him to sleep." [Doc. 57] at ¶¶ 21-28. His cell gets so hot that he sleeps on a concrete slab rather than his mattress (which gets so hot that he is not able to sleep on it). *Id.* at ¶ 24. This every-night heat has caused Plaintiff "severe sleep deprivation, as well as the

---

[1] The following facts are drawn from Plaintiff's Third Amended Complaint. *See* [Doc. 57].

physical and mental sequalae of sleep deprivation." *Id.* at ¶ 25. Plaintiff has suffered

"high blood pressure, depression, and memory problems due to his prolonged sleep

deprivation." *Id.* at ¶ 27. Defendants have known of this severe sleep deprivation and its

damaging impact on Plaintiff for years and have "done nothing to provide

constitutionally adequate conditions of confinement that allow Plaintiff a chance at

restful sleep." *Id.* at ¶¶ 28-29; *see also Loera v. True*, Civil Action No. 21-cv-02794-

NYW-MEH, 2023 LX 79948, at *20-23 (D. Colo. Mar. 15, 2023) (denying a motion to

dismiss on Plaintiff's previously filed pro se claim of the same sleep deprivation).

Defendants have also subjected Plaintiff to extreme isolation for over five years.

Throughout his incarceration at ADX, Plaintiff has been held in solitary confinement with

no contact with other inmates. "On a typical day, Plaintiff has no contact with a single

other human being who shares a language in which they can communicate." [Doc. 57]

at ¶¶ 30-31. The Special Administrative Measures imposed on Plaintiff severely limit his

ability to maintain relationships with his family and others and also cause him to go

weeks without recreation and exercise time. *Id.* at ¶¶ 32-35. He does not have

meaningful contact with other human beings: "the guards do not speak to him and most

do not speak Spanish." *Id.* at ¶ 36. In these torturous isolating circumstances, Plaintiff

has attempted to begin learning English, so that he can have any hope of connecting

with those around him; however, Defendants are denying him this opportunity by only

giving him paper worksheets that are all in English, which he cannot understand any

part of. *Id.* at ¶ 37-38. Plaintiff has repeatedly requested ESL educational materials that

could actually help him learn the language but he has been repeatedly denied them. *Id.*

Plaintiff's state of constant extreme isolation as well as his severe sleep deprivation have obvious and substantial deleterious impacts on his mental health. Despite this fact, Plaintiff lacks access to Spanish-speaking mental health professionals on a regular basis. [Doc. 57] at ¶¶ 39-43. He has repeatedly requested such access but has been denied. *Id.* at ¶ 41. "Plaintiff therefore has vanishingly little help from the mental health staff to deal with the trauma of prolonged solitary confinement and other events and conditions which adversely affect his mental health." *Id.* at ¶ 42.

Finally, Defendants have been deliberately indifferent to Plaintiff's serious medical needs. Plaintiff has been "suffering near-constant severe sinus, ear, nose, and throat pain for years." [Doc. 57] at ¶ 2. Throughout the years he has been suffering this pain, he has repeatedly informed those in charge at ADX of his near-constant severe pain and need for treatment; even so, Defendants have refused to provide Plaintiff with access to medical care that could treat it. *Id.* at ¶¶ 2, 14-16. Plaintiff continues to suffer such near-constant severe pain and will do so until he is seen by a medical professional "capable of treating his condition or at least managing his pain with proper, effective medication." *Id.* at ¶¶ 16-20.

Because Plaintiff has plausibly alleged violations of his Eighth Amendment right to be free from cruel and unusual punishment, Defendants' motion should be denied.

<u>**STANDARD OF REVIEW**</u>

When evaluating Defendants' Motion to Dismiss, this Court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011) (Rule 12(b)(6)); *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir.

3

1971) (Rule 12(b)(1)). A complaint must "state a plausible claim for relief" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Asking for plausible grounds to infer" the existence of a claim for relief "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to prove that claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal quotation marks omitted).

## ARGUMENT

### 1. Plaintiff has plausibly alleged Eighth Amendment violations based on years-long severe and torturous sleep deprivation.

As detailed above, Plaintiff has been suffering severe sleep deprivation for years because hot air is blasted into his cell at intervals every night. These conditions wake him up 4-5 times per night and make his mattress and cell too hot to sleep comfortably for any prolonged period of time. Defendants are and have been aware of this condition. Indeed, Plaintiff filed a lawsuit about this exact issue (among other things) years ago, and it has yet to be corrected. *See Loera v. True*, Civil Action No. 21-cv-02794-NYW-MEH, 2023 LX 79948, at *20-23 (D. Colo. Mar. 15, 2023).

In Plaintiff's previous lawsuit, District Judge Wang correctly concluded that Plaintiff had plausibly pleaded a violation of his Eighth Amendment right sufficient to survive a motion to dismiss. *Id.* In reaching this conclusion, Judge Wang reasoned that

> The government "must provide within [a prison] reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, plumbing)." *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980). "In short, [the government] must provide an inmate with shelter which does not cause his degeneration or threaten his mental and physical

4

well being." *Id.* "[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) (collecting cases).

…

"Conditions [of confinement] which result in chronic, long term sleep deprivation may support a claim under the Eighth Amendment." *Matthews v. Holland*, No. 1:14-cv-01959-SKO-PC, 2017 U.S. Dist. LEXIS 42581, 2017 WL 1093847, at *3 (E.D. Cal. Mar. 23, 2017); *see also Custard v. Turner*, No. 06-cv-01036-WYD-CBS, 2007 U.S. Dist. LEXIS 71613, 2007 WL 2872436, at *5 (D. Colo. Sept. 26, 2007) (recognizing that "near-constant deprivation of sleep may constitute an unconstitutional condition of confinement") (citing *Keenan v. Hall*, 83 F.3d 1083, 1090-91 (9th Cir. 1996)). Courts have concluded that where an inmate alleges that his or her sleep is routinely disrupted *every night* for an indefinite period of time, this may be sufficient to state an Eighth Amendment claim. *See, e.g., Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (concluding that the plaintiff sufficiently stated an Eighth Amendment claim by alleging that a noise "occurred every night, often all night, interrupting or preventing his sleep"); *Matthews*, 2017 U.S. Dist. LEXIS 42581, 2017 WL 1093847, at *3 (allegations that loud beeps occurring in 5, 10, 15, and 20 minute intervals that resulted in the inmate's inability to sleep were "sufficiently extreme to meet the objective element of a conditions of confinement claim"); *Evans v. McDaniels*, No. 3:09-cv-0319-LRH-VPC, 2010 U.S. Dist. LEXIS 91483, 2010 WL 2953986, at *3 (D. Nev. July 23, 2010) (allegations that defendants "subjected [the plaintiff] to sleep deprivation through constant noise from speakers and from banging on pipes" stated a colorable Eighth Amendment claim); *Guitron v. Noonan*, No. 18-cv-1072, 2020 U.S. Dist. LEXIS 150569, 2020 WL 4904073, at *6 (E.D. Wis. Aug. 20, 2020) (allegations that "noise disrupted [the pretrial detainee's] sleep every night for months on end" were sufficient to state Fourteenth Amendment claim).

*Loera v. True*, Civil Action No. 21-cv-02794-NYW-MEH, 2023 LX 79948, at *20-22 (D. Colo. Mar. 15, 2023).

In light of this previous lawsuit, which survived a motion to dismiss and was on the verge of discovery, it is bizarre and disingenuous for Defendants to plead ignorance about the conditions of Plaintiff's cell and the impact on his sleep. *See, e.g.,* [Doc. 62] at 9-10. This Court should not be misled by Defendants' obfuscation and should, instead, concur with Judge Wang's thorough reasoning in the previous case. *See also, e.g.,*

*Garrett v. Thaler*, 560 F. App'x 375, 379-80 (5th Cir. 2014) (concluding that plaintiff had plausibly pleaded an Eighth Amendment claim based on sleep deprivation and noting that "fellow courts have likewise found that inmates plausibly alleged cruel and unusual punishment in violation of the Eighth Amendment when prison conditions prevented adequate sleep.") (citing *Walker*, 717 F.3d at 126). Plaintiff's allegations "state a plausible Eighth Amendment claim, given his allegations that his sleep is 'repeatedly' interrupted 'throughout the night, every night,' resulting in health problems," and these allegations "are sufficient to survive Defendants' Motion to Dismiss." *Loera v. True*, Civil Action No. 21-cv-02794-NYW-MEH, 2023 LX 79948, at \*22-23 (D. Colo. Mar. 15, 2023).

### 2. Plaintiff has plausibly alleged an Eighth Amendment violation based on his profound isolation.

Plaintiff has also plausibly pleaded an Eighth Amendment violation based on his extreme, all-encompassing isolation. The Eighth Amendment "reaffirms the duty of the government to respect the dignity of all persons." *Roper* v. *Simmons*, 543 U. S. 551, 560 (2005). "To enforce the Constitution's protection of human dignity," courts "loo[k] to the evolving standards of decency that mark the progress of a maturing society," acknowledging that "[t]he Eighth Amendment is not fastened to the obsolete." *Hall v. Florida*, 572 U. S. 701, 708 (2014) (internal quotation marks omitted). "[T]hose who try to formulate substantial principles of justice should reserve a prominent place for human dignity. If this is not done, the distinctively moral aspects of justice will be absent; and the claims of justice will be at best legalistic and at worst arbitrary." Michael S. Pritchard, *Human Dignity and Justice*, 82 ETHICS 299, 300-01 (1972).

"An inmate making an Eighth Amendment claim for constitutionally inadequate conditions of confinement must allege and prove an objective component and subjective

6

component associated with the deficiency" claimed. *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). "The objective component requires conditions sufficiently serious so as to 'deprive inmates of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes*, 452 U.S. at 347). "Alternatively, a condition must be sufficiently serious so as [to] constitute a substantial risk of serious harm." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993)). In turn, "[t]he subjective component requires that a ... prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 297, 303 (1991)). The subjective component is met if the prisoner shows the defendants "knew he faced a substantial risk of harm and disregarded that risk 'by failing to take reasonable measures to abate it.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

"Solitary confinement deprives people 'of almost all meaningful perceptual, social, and occupational stimulation, including natural light, most or all personal property, and almost all human interaction . . . except that which 'occurs through bars or . . . slots in solid metal doors.'" Laura Rovner, *Solitary Confinement, Human Dignity, and the Eighth Amendment*, 111 Va. L. Rev. 671, 682 (May 2025) (quoting Brief of Medical & Other Scientific & Health-Related Professionals as Amici Curiae in Support of Respondents & Affirmance at 3, *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)). "'The wealth of medical and other scientific and health-related research examining the consequences of prolonged use of solitary confinement overwhelmingly concludes that it inflicts profound psychological' and sometimes physical harm. Studies across nations and over decades conclude again and again that '[t]he restriction of environmental stimulation

and social isolation associated with confinement in solitary are strikingly toxic' to people." *Id.* at 683. As experts have clearly and indisputably observed, "[h]uman beings require at least some social interaction and productive activities to establish and sustain a sense of identity and to maintain a grasp on reality." *Id.* at 684.

Courts have recognized these obvious truths in the Eighth Amendment context. "To the extent plaintiffs can show that they were sufficiently deprived of a basic human need such as human interaction and that the deprivation caused a significant harm or risk of harm, they have made out at least the objective prong of an Eighth Amendment claim." *Porter v. Clarke*, 290 F. Supp. 3d 518, 528 (E.D. Va. 2018). "[T]here is a large and growing body of literature—both academic and legal—discussing the potentially devastating effects of prolonged periods of isolation."[2] *Porter v. Clarke*, 290 F. Supp. 3d 518, 532-33 (E.D. Va. 2018). Importantly, "[g]iven the rapidly evolving information available about the potential harmful effects of solitary confinement—and the explicit incorporation of contemporary standards of decency into the Eighth Amendment standard—it is clear that this Court is not bound by" previous cases. *Porter*, 290 F. Supp. 3d at 529.

Plaintiff has plausibly alleged that for over five years Defendants have intentionally deprived him of substantial human contact, through the combination of solitary confinement, SAMs, and denial of access to both mental health professionals with whom he shares a language and the resources to learn English so as to be able to

---

[2] At the summary judgment stage, the Court in *Porter* considered extensive expert reports that are worthy of review and consideration by this Court. *See Porter*, 290 F. Supp. 3d at 529-532. If Plaintiff's isolation claim is allowed to proceed to discovery, he and his counsel anticipate similar expert reports and testimony to explain and support his compelling claim.

communicate with those around him. [Doc. 57] at ¶¶ 4, 30-38, 68-78. Defendants are indisputably aware of Plaintiff's hopelessly isolated circumstances. The SAMs are known and approved at every meaningful level from the Warden on down to Plaintiff's case manager. And Plaintiff's attempts to learn English and meet with a Spanish-speaking mental health professional have been rebuffed despite his repeated requests for both means in which he might expand his horizons and benefit from additional human interaction.

Read properly, in the light most favorable to Plaintiff, the complaint's allegations establish substantially greater isolation than those considered in *Silverstein v. Fed. Bureau of Prisons*, 559 F. App'x 739, 753-54 (10th Cir. 2014). In *Silverstein* the Tenth Circuit noted that the plaintiff had "daily contact with three shifts of BOP guards and daily interaction with other staff" and could "communicate with other inmates." *Id.* at 755. Plaintiff has plausibly alleged that he has no such contact because guards do not talk to him and he is being prevented from learning English so that he could actually communicate with human beings around him. Additionally, *Silverstein* was a case that was allowed to discovery, such that both the District Court and the Tenth Circuit had the benefit of a fulsome factual record regarding the plaintiff's actual conditions of confinement, as well as expert reports about what impact those conditions had on his mental health. Plaintiff should be afforded the same opportunity to engage in discovery, where he has alleged much more isolated conditions and where, as the *Porter* court (and other courts) rightly noted above, research on isolation and its massively negative impacts on human beings has only grown more robust in the decade since *Silverstein* was decided.

Put starkly, "[i]n the aggregate, these policies create an environment that pushes prisoners to the limits of constitutional protections and what a human can endure." Zafir Shaiq, *More Restrictive Than Necessary: A Policy Review of Secure Housing Units*, 10 HASTINGS RACE & POVERTY L.J. 327, 361 (Summer 2013). Plaintiff's claim based on his profound isolation should be allowed to proceed to discovery.

### 3. Plaintiff has plausibly alleged deliberate indifference to his serious physical medical needs.

Plaintiff has plausibly pleaded Eighth Amendment violations based on Defendants' deliberate indifference to his serious medical needs. The Tenth Circuit has previously considered deliberate indifference based on untreated pain "concern[ing] painful events that last for hours or days." *Hardy v. Rabie*, 147 F.4th 1156, 1164-65 (10th Cir. 2025) (citing *McCowan v. Morales*, 945 F.3d 1276, 1291 (10th Cir. 2019) ("[The plaintiff] does assert that [the defendant's] delay in getting [the plaintiff] to the detention center resulted in [the plaintiff] suffering up to several hours of excruciating pain."); *Al-Turki*, 762 F.3d at 1193 ("This severe pain and fear of death lasted for several hours, during which Plaintiff was provided with neither the medical treatment that could have reduced his pain nor the medical diagnosis that could have removed his fear of death."); *Sealock*, 218 F.3d at 1210 ("The pain and suffering imposed by [the defendant's] failure to get him treatment lasted several hours."); *Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005) ("In the present case, [the plaintiff] presented evidence that she did in fact suffer severe pain for several days.").

Of course,

> There is no precise amount of suffering that makes a delay in medical care actionable. Whether pain and suffering are sufficiently serious for a deliberate indifference claim depends on context, and "[e]ven a brief delay [in medical treatment] may be unconstitutional." *Mata*, 427 F.3d at 755. We

read Hardy's complaint to demonstrate much more than a mere "twinge of pain" from Deputy Rabie's actions, *Sealock*, 218 F.3d at 1210, and so he has sufficiently pleaded objective harm. *See Mata*, 427 F.3d at 753 ("[T]he purpose [of the objectivity component] is to limit claims to significant, as opposed to trivial, suffering[.]").

*Hardy v. Rabie*, 147 F.4th 1156, 1164-65 (10th Cir. 2025). Likewise, here, Plaintiff has plausibly alleged "more than a mere twinge of pain"—he has alleged near-constant severe pain that has continued, untreated, for years. [Doc. 57] at ¶¶ 2, 14-20.

In response, Defendants cite cases for the proposition that "allergies" are not sufficient to constitute a serious medical need. *See, e.g.,* [Doc. 62] at 7-9. However, this line of argument misstates both Plaintiff's allegations and the cited law. First, Plaintiff has not simply complained of "allergies"; rather, he has alleged that he has suffered "near-constant severe sinus, ear, nose, and throat pain for years," [Doc. 57] at ¶ 2, and that he has been suffering "objectively serious medical needs related to allergies ***and*** his ears, nose, and throat." *Id.* at ¶ 14 (emphasis added). Read correctly, Plaintiff's complaint plausibly pleads near-constant severe pain in his ears, nose, and throat.

As to the law, Defendants' cited cases involve either disputes over the renewal of prescription medications for allergies, *see, e.g., McCoy v. Pace*, 493 F. App'x 494, 495 (5th Cir. 2012) & *Francis v. W. Corr. Inst.*, No. GJH-16-2898, 2017 U.S. Dist. LEXIS 130265, at *1-2 (D. Md. Aug. 14, 2017), or a case in which a plaintiff "failed to allege any facts indicating that [defendant] deliberately indifferent" to any alleged serious medical need. *See Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). Moreover, in *McCoy* the plaintiff, after a hearing, failed to allege "facts that would support a finding that he has suffered substantial harm as a result of the defendants' deliberate indifference." 493 F. App'x at 495. Here, Plaintiff has plausibly pleaded substantial harm: near-constant

11

severe pain that has persisted without treatment for years, despite Defendants' knowledge of his condition. [Doc. 57] at ¶¶ 2, 14-20, 46-54. Therefore, Plaintiff's deliberate indifference claim should be allowed to proceed.

### 4. The fact-intensive nature of this case further weighs against dismissal.

Plaintiff has not even started to conduct discovery, much less began preparing to go to trial. Thus, Defendants' request for dismissal of Plaintiff's Complaint is both unwarranted based on the well-pleaded facts in the Third Amended Complaint, and premature because of the still-undeveloped record upon which the Court would make such a determination.

The very fact-intensive nature of the inquiry necessitated by Plaintiff's legal claims further weighs against dismissing any of his claims at this very early stage in the case. *See, e.g.*, *Regas Christou v. Beatport, LLC*, 849 F. Supp. 2d 1055, 1066 (D. Colo. 2012) (courts hesitate to grant motions to dismiss based on fact-intensive inquiries). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations marks and citation omitted). Stating a plausible claim for relief "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to prove that claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Wrongly dismissing the case, as Defendants request, would preclude discovery of factual bases for this court to consider. Plaintiff should be permitted to go forward with his legal claims, as Defendants have failed to meet their burden to persuade this Court otherwise in their motion to dismiss.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss should be denied.

DATED this 24ʰ day of November 2025.

KILLMER LANE, LLP

*s/ Darold W. Killmer*
Darold W. Killmer
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 fax
dkillmer@killmerlane.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2025, I filed the foregoing via CM/ECF, which will send notification to the following:

Thomas A. Isler
Assistant United States Attorney
1801 California Street, Ste. 1600
Denver, Colorado 80202
(303) 454-0336
thomas.isler@usdoj.gov

*Counsel for Defendants*

KILLMER LANE, LLP

*s/ Jesse Askeland*
Paralegal